Babak Pourtavoosi, Esquire,
Law Offices of Babak Pourtavoosi PC
Of counsel to Pannun The Firm, PC
75-20 Astoria Boulevard, Suite 170
Jackson Heights, NY 11370
(718) 672-8000; Fax: (718) 732-4514
babakpacer@gmail.com
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| **Harjit Singh** and **Janki Kaur** | Civ. No._____ |
| victims of torture | COMPLAINT |
| **Plaintiffs** | |
| v. | JURY TRIAL DEMANDED |
| **Manjit Singh G.K.**, President, Delhi Sikh Gurudwara Management Committee "DSGMC"; President Shiromani Akali Dal-Badal "SAD-Badal", Delhi Chapter | |
| **Defendant** | |

_____

Plaintiffs, individually and collectively, allege the following:

### I. PRELIMINARY STATEMENT

1) While torture is a very common phenomenon in India as the authorities routinely use torture as means for extracting confession, however, the instant

1

case is different from all other cases because here the torture was used by the defendant Manjit Singh G.K. as a tool for securing electoral victory and to gain the control of an all powerful and opulent representative organization, Delhi Sikh Gurudwara Management Committee "DSGMC".

2) The defendant Manjit Singh G.K. is the President of Delhi Chapter of Shiromani Akal Dal-Badal "SAD-Badal" which is in alliance with Bhartiya Janata Party "BJP", the ruling party of India. SAD-Badal which controls the state of Punjab also wields influence in the Central Government of India. The defendant Manjit Singh G.K. gains his influence from being a leader of SAD-Badal and being President of DSGMC. Punjab government machinery and police remains are at the disposal of the defendant. *See* http://archive.indianexpress.com/news/punjab-sent-cops-for-gurdwara-polls-want-them-out-delhi-police-chief-to-centre/1068230/

3) The tactics used by the defendant Manjit Singh G.K. with the help SAD-Badal and Punjab Police to secure electoral victory created such an atmosphere of terror in Delhi that it resulted in remarkable low voter turnout. *See* http://timesofindia.indiatimes.com/city/delhi/Gurdwara-polls-marred-by-low-turnout-1-death/articleshow/18213977.cms?

4) During 2013 elections for DSGMC, Punjab state machinery and police was extensively used to assure the victory of Manjit Singh G.K., the defendant. The

2

defendant Manjit Singh G.K. was elected as President of DSGMC as unopposed because his opponent was arm twisted and forced into withdrawing his candidacy.

5) The defendant Manjit Singh G.K. is the incumbent President of Delhi Sikh Gurudwara Management Committee "DSGMC" which is a statutory body created through an Act of the Parliament of India. By virtue of being a representative body of Sikhs, DSGMC and its office bearers enjoy immense political influence and hence control over police and administration. The elections for DSGMC are held on party basis and several Sikh political parties participate in elections. See http://delhi.gov.in/wps/wcm/connect/doit_dge/Directorate+of+Gurdwara+Elections/Home/

6) Due to the importance of DSGMC elections and its significance in state assembly and Parliament elections, political parties attempt to wield their influence in DSGMC and try to win as many of its seats as possible.

7) Besides the political influence, DSGMC also plays official and unofficial pivotal role in affairs concerning Sikh community living in Delhi and several other states of India. Therefore, DSGMC influences Sikh votes in all the states. DSGMC also exclusively controls and runs Sikh Temples "Gurudwaras" located in Delhi and several other states of India except Punjab; collects

donations and disburses and manages all the funds. Average annual budget of DSGMC runs into millions of dollars. The DSGMC's income for the second quarter of 2015 (April-June) is reported as 222991597.00 Indian Rupees equaling to USD $3519746.195 *See* *http://www.dsgmc.in/accounts/juneincome.pdf* *also see* http://www.dsgmc.in/

8) Being a statutory body representing Sikhs, DSGMC and its members are also looked upon by the Sikh victims of injustice and mass violence, especially victims and widows of November 1984 Sikh Genocide in which several thousand Sikhs were murdered in Delhi alone. DSGMC also publically champions the cause of welfare of the families who suffered during November 1984, particularly Sikh widow of November 1984 anti-Sikh violence. *See* http://timesofindia.indiatimes.com/city/chandigarh/DSGMC-hits-out-at-Delhi-govt-for-not-setting-aside-money-for-widows-of-84-riot-victims/articleshow/47918753.cms

9) The named plaintiffs have suffered torture, cruel and inhuman treatment while living in India, caused, ordered, commanded or perpetrated personally by the defendant or by the agents of the defendants or individuals acting on behalf of or controlled by the defendant including police officials.

## II. PARTIES

**A. Named Plaintiffs**

10) Plaintiff Harjit Singh, is a male Sikh, national and citizen of India, currently residing in the United States, previously resident of New Delhi, India. Plaintiff Harjit Singh was tortured, physically as well as mentally, at the behest of orders or commands of the defendant, by the individuals including members of police and administration, who were acting on the orders of or on behalf of the defendant, between 2012 and 2015. The spree of torture was unleashed against the plaintiff by the defendant in New Delhi India when during 2012 plaintiff refused to extend his support to the defendant 's campaign and efforts to be elected as President DSGMC. From that point onward, plaintiff was hounded by the defendant, particularly, after winning the DSGMC elections, the defendant through private individuals, policemen and administration officials made the plaintiff's life miserable by extending death threats to plaintiff's immediate family and by having the plaintiff illegally detained and physically tortured. The defendant using his influence as local head of SAD-Badal especially summoned Punjab Police in Delhi and used the police power to twist arm and muscle his opponent and to secure support and votes. The defendant's use of Punjab Police during elections was wide reported in the media. *See* http://archive.indianexpress.com/news/punjab-sent-cops-for-gurdwara-polls-want-them-out-delhi-police-chief-to-centre/1068230/

11) The plaintiff was forced by the defendant through physical torture, constant and ongoing threats of death and torture against the plaintiff and his family members, to abandon his residence and flee the country and come to the United States. Due to the actions of the defendant, his influence and position and general pervasive culture of impunity, the plaintiff fears for his and his family's life and security in case of if he were to return to India.

12) Plaintiff Janki Kaur, is a Sikh female, native of New Delhi India. Janki Kaur's husband was murdered in Delhi during anti-Sikh violence of November 1984. Janki Kaur, along with other widows and survivors of November 1984 has been participating in activities seeking justice for the anti-Sikh violence and appropriate compensation and rehabilitation for the survivors. Ms. Janki Kaur approached the defendant in 2014 after she learnt that DSGMC has announced rupees Rs.1000.00 to the widows of November 1984. The plaintiff's case for compensation was denied by the DSGMC. After several trips to the DSGMC, the plaintiff was asked to see the President Manjit Singh GK, the defendant. The plaintiff met the defendant at the head office of DSGMC located in Gurudwara Rakab Ganj in New Delhi. The defendant not only the refused to help the plaintiff but when the plaintiff protested and told that he will approach the media about denial of his compensation request, the defendant, first verbally abused and cursed the plaintiff and then ordered his employees and other men

to grope and sexually harass the plaintiff. The defendant and his men told the plaintiff that "she should be used to feel several men at the same time because she has been taking it since 1984". After the incident of sexual assault and harassment, the defendant approved the compensation application of the plaintiff but at the same time sent goons to hound the plaintiff threatening her of the repeated sexual assaults if she reported the mistreatment. Plaintiff, who was a low grade but permanent government servant, had to take leave from her job and flee the country and come to the United States due to the torture ordered and carried out by the defendant.

**B. Named Defendant**

13) Defendant Manjit Singh GK, is a male, native and citizen of India, leader of SAD-Badal and incumbent President of DSGMC since February 2013. As leader of SAD-Badal and as President of DSGMC, the defendant wields great power and influence in police and administration, both in Delhi and in Punjab where his party is in power.

14) In late 2012, the defendant announced to contest for the DSGMC elections to be held in February 2013. The defendant through the support of his party SAD-Badal and its allies BJP, fully used the resources of the government and administration, particularly Punjab Police during his election campaign. Summoning of Punjab Police in Delhi during the DSGMC was widely reported

in the media and newspapers. The defendant used the police and his private goons to torture, harass, intimidate and hound his political opponents and anyone who did not support his election.

15) The election of defendant as President of DSGMC did not bring an end to the era of difficulties for defendant's opponents, in fact, his elections escalated the matters as now he now wielded even more power to order and unleash torture and terror on anyone opposing him, not supporting him or questioning him, as it happened with the named plaintiffs' in this case.

16) Because of the plaintiff Harjit Singh's social status, impeccable reputation and good name in the social circle and community, the defendant during his campaign for DSGMC elections, reached out to the plaintiff Harjit Singh seeking his support. Due to the extreme embarrassment caused by the defendant to the plaintiff where plaintiff was tricked into removing his turban considered as huge dishonor, the plaintiff refused to extend any support to the defendant and his political campaign or his political party, i.e. SAD-Badal during DSGMC elections.

### III.   JURISDICTION AND VENUE

17) Plaintiffs allege that Defendants are liable for Torture, Cruel and inhuman treatment as defined by customary international law and the Torture

Victim Protection Act (TVPA), Pub. L. No. 102-256, 105 Stat. 73 (1992) (codified at 28 USC § 1350, note § 2(a). Plaintiffs further allege that Defendants are liable for violations of customary international law and treaty law prohibiting the commission of human rights violations and acts of torture. Accordingly, this Court has jurisdiction over this action under Torture Victim Protection Act (TVPA) 28 USC § 1350, note § 2(a) and 28 USC § 1331 (Federal Question Jurisdiction). The plaintiffs are present in the United States while the defendant is believed to have just arrived in the United States within the territorial limits of this District Court.

18) Venue is proper in the Southern District of New York pursuant of 28 USC §§ 1391(b)(3) and (d). This Court has personal jurisdiction over the defendants as at or around the time of filing the instant complaint, the defendant is present in the state of New York within the territorial boundaries of this District.

## IV.   STATEMENT OF FACTS

19) Torture, particularly upon the members of religious minorities and other voiceless groups and communities is wide spread and pervasive evil in India, the so called biggest democracy of the world. Government of India's reaction to the acts of torture whether committed by private individuals of by state officials, as a part of stated official policy or unstated policy, if nothing but acquiescence, approval and condoning, which is evidenced from the fact that

9

India despite signing the UN Convention Against Torture has not yet ratified and incorporated the provisions of Torture Convention into its domestic law.

20) Torture in India, especially at the hands of police and on the behest of political leaders and influential people has been more rampant against members of Sikh community, both males and females, as evidenced by the rape of thousands of women during November 1984 anti Sikh violence and extra judicial killing and torture of several hundred thousand Sikhs in Punjab during the decades of 80s and 90s.

21) With the above background, the plaintiffs, a Sikh male and a female, bring their claim of torture against the defendant.

22) Starting from November 2012, defendant started targeting the plaintiff Harjit Singh after he refused to support the defendant's political campaign seeking election to the office of President DSGMC. The defendant threatened the plaintiff on his face of the dire consequences for refusing to support the defendant.

23) Soon after the defendant's threats to the plaintiff, a police party raided the plaintiff Harjit Singh's residence, picked him up and took him to police station where he was detained for several days without charges, without being presented before any court, was denied access to lawyers, was kept in custody without food and sufficient water, was deprived of the sleep for extended hours,

was blind folded and threatened to be shot dead, put the pistol in the mouth and threatened to be shot; stripped naked and hung upside down by the policemen. While being tortured the plaintiffs was told he is being taught a lesson for refusing to support SAD-Badal candidate Manjit Singh GK during DSGMC elections.

24) After his release from the illegal detention, the plaintiff Harjit Singh was then forced to attend public rallies organized in support of the defendant and was forced to participate in door to door campaign for the defendant's election, with the threats that if he refused, he will be subjected to torture again.

## Inadequacy of Local Remedies

25) Upon information and belief, as practical matter and proven fact, no adequate remedies are available to Plaintiffs under the systems in India. In fact, Indian governments, both State and Central, unabashedly practice "impunity" towards the human rights violators. All efforts by or on behalf of the similarly situated, to seek adequate remedy against the perpetrators have always been countered by the perpetrators through their influence and position.

## V. General Allegations

26) During 2013 and 2014 in New Delhi, India, the defendant using his influence as leader of SAD-Badal and President of DSGMC, himself and

through others acting on his behalf, committed the acts of torture, mental and physical, including illegal detention, physical abuse, deprivation of sleep, food and water and threats of death, and sexual harassment, against the named plaintiffs.

## FIRST CLAIM FOR RELIEF

*(Torture In Violation of T.V.PA.)*

27) Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28) The acts committed by the defendant, whether carried out personally or through agents, committed against Plaintiffs described herein each separately constitute Torture as defined in TVPA. These acts include, sexual assault; illegal detention; detention without charges, lawyer or judge; sleep and food deprivation; extreme fear of being executed; stripping naked and hanging upside down, resulting in severe physical and psychological abuse and agony, humiliation, fear and debasement.

29) Defendant's acts also constitute torts committed in violation of the law of nations, and thus of the United States, as reflected in federal common law which incorporated extrajudicial killing, pursuant to 28 U.S.C §§ 1331 and 1350 .

30) Defendants' acts and omissions described caused Plaintiffs to suffer damages, including severe mental and emotional pain and suffering in an amount to be proven in trial.

31) Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious and oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

*(Intentional Infliction of Emotional Distress)*

32) Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33) Defendant through his actions, intended to cause the plaintiffs to suffer humiliation, mental anguish and extreme emotional distress or, alternatively, defendant recklessly disregarded a substantial probability of causing humiliation, mental anguish, and severe emotional distress to Plaintiffs with his conduct.

34) As a direct and proximate cause of Defendants' outrageous conduct, Plaintiffs suffered severe emotional distress and mental suffering.

35) Defendant's acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:
a) For compensatory damages in an amount to be proven at trial;
b) For punitive and exemplary damages in an amount to be proven at trial;
c) For reasonable attorney's fees and cost of suits;
d) For a declaratory judgment holding that Defendants' conduct was in violation of the laws of nations.
e) For such other and further relief as the Court may deem just and proper.

A jury trial is demanded on all issues.

Dated: July 10, 2015          ___/s/Babak Pourtavoosi,_____
                              Babak Pourtavoosi, Esquire,
                              75-20 Astoria Boulevard, Suite 170
                              Jackson Heights, NY 11370
                              (718) 672-8000; Fax: (718) 732-4514
                              babakpacer@gmail.com
                              Attorney for Plaintiffs