Babak Pourtavoosi, Esquire,
Law Offices of Babak Pourtavoosi PC
Of counsel to Pannun The Firm, PC
75-20 Astoria Boulevard, Suite 170
Jackson Heights, NY 11370
(718) 672-8000; Fax: (718) 732-4514
babakpacer@gmail.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Harjit Singh** | ) |
| and | ) Civ. No. 15-05372 |
| **Janki Kaur** | ) |
| | ) |
| victims of torture | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) PLAINTIFFS' RESPONSE |
| | ) TO ORDER TO SHOW CAUSE |
| v. | ) OF MARCH 17, 2016 |
| | ) |
| **Manjit Singh G.K.,** | ) VIA ECF ON ALL PARTIES |
| | ) |
| President, Delhi Sikh Gurudwara | ) DATED MARCH 30, 2016 |
| Management Committee "DSGMC"; | ) |
| President Shiromani Akali Dal-Badal | ) HON. ANDREW L. CARTER, JR. |
| "SAD-Badal", Delhi Chapter | ) DISTRICT COURT JUDGE |
| | ) |
| **Defendant.** | ) |

Dear Judge Carter:

This letter brief shall discuss the issue of personal jurisdiction and subject matter

jurisdiction over the defendant in this case as ordered by the Hon. Andrew L. Carter, Jr. on

March 17, 2016.

**PERSONAL JURISDICTION**[1]

Whether a federal court in the Second Circuit has personal jurisdiction over a given defendant in a diversity case, or in matters where there is no nationwide jurisdiction, is determined according to the law of the forum state. See *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993).

Personal jurisdiction is "determined by reference to the law of the jurisdiction in which the court sits. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d **55,** 57 (2d Cir. 1985). See also *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963); *King v. Washington Adventist Hosp.*, No. 00-7320, 2001 U.S. App. LEXIS 981, at *4 (2d Cir. Jan. 23, 2001); *Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000), *vacated by* 139 F. Supp. 2d 505 (S.D.N.Y. 2001).

The Court must find the law of the forum state, in this case New York Civil Practice Law and Rules Sections 301 and 302 apply and consider principles of federal due process[2]. *Id. cases cited.* Basically, to comport with the Fourteenth Amendment, Plaintiff must show minimum contacts necessary to justify "specific" jurisdiction" over the Defendant by showing that Plaintiffs' claims arise out of or relate to Defendant's contacts with the forum state or New York and Defendant "purposefully availed" himself of the privilege of doing business in New York so he could reasonably foresee being hauled into court there. *Id. cases cited.* Plaintiffs must only make a prima facie showing by a preponderance of the evidence and the court must examine the evidence in the light most favorable to Plaintiffs, the party with the burden of proof. *Jazini v.*

---

[1] The terms "general" and "specific" personal jurisdiction were adopted by the United States Supreme Court in *Heliocopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.2 (1984).

[2] The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a nonresident defendant with whom it has "certain minimum contacts **...** such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'".. . In determining whether minimum contacts exist, the court considers "the relationship among the defendant, the forum [state], and the litigation." *Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998).

*Nissan Motor Co., Ltd*., 148 F.3d 181, 184 (2d Cir. 1998) (stating that a jurisdiction testing motion may be defeated by good faith allegations of jurisdiction). *See also Ball,* 902 F.2d at 197 (stating that "[a]t [the] preliminary stage, the plaintiffs prima facie showing may be established solely by allegations[,]" however, "[a]fter discovery, the plaintiffs prima facie showing.., must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."). Further as no discovery has yet been conducted in this matter the court must assume Plaintiff's factual assertions as true for purposes of the jurisdictional inquiry. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied,* 531 U.S. 1052 (2000).

Under New York law, New York State law, specific jurisdiction exists pursuant to the New York Civil Practice Law and Rules 302 ("C.P.L.R.") and general jurisdiction exists under C.P.L.R. 301. *See Domond v. Great Am. Recreation, Inc.,* 116 F. Supp. 2d 368, 373 (E.D.N.Y. 2000); *Ugalde v. DynaCorp, Inc.,* No. 98-Civ-5459, 2000 U.S. Dist. LEXIS 1745, at *6-7 (S.D.N.Y. Feb. 21, 2000) (established a *prima facie* showing of personal jurisdiction over defendant under a "doing business" theory).

Physical presence in the forum state of New York by the defendant is a paramount basis for personal jurisdiction with exceptions that do not apply here. *Pavlo v. James*, 437 F. Supp. 125, 127 (S.D.N.Y. 1977). Further, a person who is domiciled in New York State is subject to *in personam* jurisdiction for any claim wherever it arises and regardless of where the defendant is when served with the summons. *See* N.Y. C.P.L.R. 313. In this case, Defendant, while foreign born, was physically present in New York State and was physically domiciled here as well. Plaintiffs submit the affidavit of service of the process server as Exhibit 1 to show proof of this along with a video on compact disc that shows service in action within the State of New York.

Defendant is also within the personal jurisdiction of the court when he is "doing business" in the forum state of New York. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd*., 763 F.2d 55, 58 (2d Cir. 1985) ("doing business" is not occasionally or casually but with a degree of permanence); *Bryant v. Finnish Nat'l Airline*, 208 N.E.2d 439, 440 (N.Y. 1965) (stating that maintaining an office in New York City indicates that the defendant is "doing business" in the state sufficient to subject him or her to jurisdiction). *See generally* Vincent Alexander, *'Doing Business' Jurisdiction: Some Unresolved Issues,* N.Y.L.J., Mar. 19, 2001, at 3 (stating that "doing business" jurisdiction is well settled as a method of obtaining personal jurisdiction *Weissman v. Seiyu, Ltd*., No. 98-Civ-6976, 2000 U.S. Dist. LEXIS 509, at **16** (S.D.N.Y. Jan. 18, 2000) (stating that "[a] cause of action arises out of a defendant's New York transaction when it is sufficiently related to the business transacted such that it would not be unfair to deem it to arise out of the transacted business"); *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982) (finding sufficient contacts within New York to be "considered systematic, regular[,] and continuous").

In the matter of *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88 (2d Cir. 2000), *cert. denied,* 121 S. Ct. 1402 (2001), analogous to this case, Plaintiffs sued Defendant for Alien Tort Claims and human rights violations. The Second Circuit held that there was in personam or personal general jurisdiction under C.P.L.R. 301, therefore, the doctrine *of forum non conveniens* did not apply. As in this case, the plaintiffs' in *Wiwa* alleged being the victims of torture and being the family of victims of extrajudicial killings orchestrated by the defendant in their native country in violation of the law of nations. The Court observed that "[w]e think it is essential for the district court to afford the parties the opportunity to present evidentiary material at a hearing on the question of FSIA jurisdiction. The district court should afford broad latitude to both sides

in this regard and resolve disputed factual matters by issuing findings of fact." *Reiss,* 235 F.3d at 747; *Kushner v. Winterthur Swiss Ins. Co.,* 620 F.2d 404, 407 (3d Cir. 1980). The circuit court rejected Defendants' arguments and held that the Defendants were subject to personal jurisdiction in the Southern District of New York because "doing business" concepts in New York State permit a court to assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity. Citing *Kernan v. Kurz-Hastings, Inc.*

The two-part test for asserting personal jurisdiction in the law of this circuit is analyzing: "the [s]tate's laws authorize service of process upon the defendant and an assertion of jurisdiction under the circumstances of the case comports with the requirements of due process."

The required due process inquiry itself has two parts: "whether a defendant has "minimum contacts" with the forum state and whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice-that is whether **...** [the exercise of jurisdiction] is reasonable under the circumstances of a particular case." *Id.*

Once minimum contacts are shown, the burden is then on the defendant to come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.*

As there, so in this case, Defendant Manjit Singh, GK has a physical presence in the forum state of New York, access to enormous resources, faces little or no language barrier, and maintains a very significant presence in New York. New York City, furthermore, where the trial would be held, is a major world capital which offers central location, easy access, and extensive facilities of all kinds. There is no other venue or forum capable of handling this matter.

Plaintiffs maintain that while Defendant Manjit Singh, GK is not a corporation as the Defendant in the *Wiwa* case, the same principles apply and this court should find as a matter of

law, in balancing the competing interests, this forum is the proper choice of forum by plaintiffs, New York residents, regarding policy interest implicit in our federal statutory law, namely the Torture Victims Protection Act (TVPA), in providing a forum for adjudication of claims of violations of the law of nations.

Therefore, it is apparent that Defendant has sufficient physical presence in the United States and in the forum state of New York as well as sufficient "doing business" affiliations to warrant passing the minimum contacts test and show that it is not unreasonable that given such contacts in New York, the Defendant might be hauled into court in New York for atrocities he helped commit against the Plaintiffs and their family members in India that constitute torture under the TVPA and the law of nations. Principles of due process and fundamental aspects of fair play and substantial justice will not be hindered by maintaining this lawsuit against Defendant so he can finally answer for the crimes he has committed against a peaceful people in India and pay both financially and within the service and commitment of justice for said crimes.

As Plaintiffs have sufficiently pled in their complaint the basis of knowledge and source of information indicating a good faith belief that Defendant has both physical presence and doing business contacts in the forum state and Defendant cannot produce any evidence to indicate that he does not, personal jurisdiction is proper in this forum against the Defendant.

Plaintiffs referred to the article published by the Quinnipiac School of Law. [3]

**SUBJECT MATTER JURISDICTION**

Subject matter jurisdiction in this case can be found under the federal question doctrine because plaintiff's original cause of action arises from a federal statute. To exercise federal question jurisdiction the case must require the interpretation of the Constitution or laws of the United States or at least the implication of federal policy.

---

[3] http://www.quinnipiac.edu/prebuilt/pdf/SchoolLaw/LawReviewLibrary/09_21QLR15(2001-2003).pdf

In a similar case to this one involving claims under the TVPA and Alien Tort Claims Act for personal injuries suffered as a result of *inter alia,* genocidal acts, torture, extrajudicial killing, and other violations of the law of nations, the result was not favorable to the plaintiffs but the law is sound and would lead to a favorable decision for the plaintiffs in this case. *Doe v. Karadzic*, 866 F. Supp. 734 (S.D.N.Y. 1994).

The Alien Tort Claim Act, 28 U.S.C. § 1350, allows for "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

In this case plaintiffs maintain and this court will find that subject matter jurisdiction pursuant to § 1350 exists because the actions of defendant, as alleged in the complaint, constitute an actionable violation of the law of nations under the statute.

"The Second Circuit has found that only conduct which rises to the level of an international common law tort by violating universally accepted standards of human rights is within the law of nations, and thus within the subject matter jurisdiction of the Act." *Doe v. Karadzic*, 866 F. Supp. 734 (S.D.N.Y. 1994) (internal quotations omitted) citing *Filartiga v. Pena-Irala,* 630 F.2d 876, 880 (2d Cir. 1980) (the Second Circuit consulted modern sources of international law including judicial decisions and scholarly works, in order to determine what constituted the law of nations.) See also *The Paquete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900).

What is actionable under the color of law and law of nations under *Filartiga* and the Alien Tort Act, is torture, slave trade, and piracy, *Filartiga,* 630 F.2d at 890; genocide and cruel, inhuman or degrading treatment, *Tel-Oren v. Libyan Arab Republic,* 726 F.2d 774, 781 (D.C. Cir. 1984) (Edwards, J. concurring); summary execution, *Forti v. Suarez-Mason,* 672 F. Supp.

1531, 1541-42 (N.D.Cal. 1987) ("official torture constitutes a cognizable violation of the law of nations"); wrongful death, *Linder v. Portocarrero,* 963 F.2d 332, 336 (11th Cir. 1992); and war crimes. *See also Demjanjuk v. Petrovsky,* 776 F.2d 571, 582 (6th Cir. 1985) (holding war crimes to be universally recognized violations of international law, but not specifically considering the Alien Tort Act), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986). *See also* Louis Henkin, *The Age of Rights* 75-76 (1990). Historically, the "traditional view of international law [was] that it establish[ed] substantive principles for determining whether one country had wronged another." *Banco National de Cuba v. Sabbatino,* 376 U.S. 398, 422, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964). "Classical international law was predominantly statist. The law of nations traditionally was defined as `the body of rules and principles of action which are binding *upon civilized states* in their relation to one another.'" *Tel-Oren v. Libyan Arab Republic,* 726 F.2d 774, 792 n. 22 (D.C. Cir. 1984) (Edwards, J.) (quoting J. Brierly, *The Law of Nations* 287 at 1 (6th ed. 1963)) (emphasis in original). *Accord Carmichael v. United Technologies Corp.,* 835 F.2d 109, 113 (5th Cir. 1988) ("The standards by which nations regulate their dealings with one another *inter se* constitute the `law of nations.' These standards include the rules of conduct which govern the affairs of this nation, acting in its national capacity, in relationships with other nations.") (citations omitted). Over time, the view that international law applied only as between nations evolved, such that international law became applicable to nations acting against their own citizens or to a foreign government acting against an individual. *See Filartiga,* 630 F.2d at 884-85. In *Filartiga,* the Second Circuit held that official torture constituted an actionable claim within the subject matter jurisdiction of the court under § 1350. In reaching this conclusion the Second Circuit stated that "[t]orture . . . is defined as any act by which severe pain and suffering, whether physical or mental, is intentionally inflicted by or at the instigation of a *public official.* "

*Id.* at 882 (citing General Assembly Resolution 3452, 30 U.N. GAOR Supp. (No. 34) 91, U.N. Doc A/1034 (1975)) (emphasis added). The *Filartiga* Court went on to hold that acts of official torture committed by a government either against aliens, or against nationals of the acting state, violate the law of nations. *Filartiga,* 630 F.2d at 884-85. The Second Circuit, in *Filartiga,* reached the conclusion that " *official torture* is now prohibited by the law of nations." *Id.* at 885 (emphasis added). Id.

Under the Torture Victim Protection Act ("TVPA"), s*ee* Torture Victim Protection Act of 1991, Pub.L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350), the TVPA provides an express private right of action against "an individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects another individual to torture or extrajudicial killing. *Id.* The TVPA was enacted to codify the private right of action against official torture set forth in *Filartiga. LaFontant v. Aristide,* 844 F. Supp. at 138 ("[t]he TVPA codifies the holding in *Filartiga v. Pena-Irala* ") (Weinstein, J.). *See H.R. Rep. No. 367,* 102nd Cong., 2nd Sess. 3-4 (1991) ("House Report"), reprinted in 1992 U.S.C.C.A.N. 84, 85-86; *S.Rep. No. 249,* 102nd Cong., 2nd Sess. 3-7 (1991) ("Senate Report"). *Doe v. Karadzic*, supra.

Section 2 of TVPA provides in relevant part: (a) Liability. — An individual who, under actual or apparent authority, or color of law, *of any foreign nation* — (1) subjects an individual to torture shall, in a civil action, be liable for damages . . . or (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages. . . . (b) Exhaustion of remedies. — A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred. 28 U.S.C. § 1350 note (1992) (emphasis added).

The TVPA was designed to protect individuals from acts taken by foreign government officials or foreign governments. On its face, the TVPA requires a plaintiff's claim for relief to be based on actions taken under color of law *of any foreign nation.* The legislative history reflects the same reading. This reading of the TVPA is entirely consistent with and, indeed, supports this Court's holding with respect to the Alien Tort Claim act, *supra,* since the TVPA was also codified at § 1350. *Doe v. Karadzic*, supra.

Consequently and therefore, Plaintiffs have shown that the court in this case has subject matter jurisdiction over the stated claims and asks for an order of such finding accordingly.

Respectfully submitted,

Dated: March 30, 2016

Sd/ Babak Pourtavoosi, Esq.
Babak Pourtavoosi, Esq.
Pannun The Firm, P.C.