**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED: _6 - 2 -16_

------------------------------------------------------- x

   **HARJIT SINGH and JANKI KAUR,**     :

               **Plaintiffs,**     :

       **-against-**     :

    :

   **MANJIT SINGH G.K., President, Delhi**     :
   **Sikh Gurudwara Management Committee;**     :
   **President, Shiromani Akali Dal-Badal, Delhi**     :
   **Chapter,**     :

    :

               **Defendant.**     :

------------------------------------------------------- x

**1:15-cv-05372 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Harjit Singh ("Singh") and Janki Kaur ("Kaur") are Indian nationals now residing in the United States. They bring this action against Defendant Manjit Singh G.K. ("Defendant"), whom they allege to be the head of two Indian political entitites. They allege violations of the Torture Victim Protection Act ("TVPA") and allege that this Court has jurisdiction over their claims pursuant to the Alien Tort Statute ("ATS") and 28 U.S.C. § 1331. On March 17, 2016, this Court issued an order to show cause as to why this action should not be dismissed for lack of personal and subject-matter jurisdiction. The Court now considers whether it has jurisdiction over this action and, finding that it does not, dismisses the case.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from Plaintiffs' Complaint:

Plaintiffs are Indian nationals and Sikhs who previously resided in New Delhi, in the Punjab region of India. (Compl., ECF No. 1, ¶¶ 10, 12.) Plaintiffs allege that Defendant is the president of the Delhi chapter of Shiromani Akal Dal-Badal ("SAD-Badal") and of the Delhi

Sikh Gurudwara Management Committee ("DSGMC"). (Compl. ¶¶ 1-2.) They describe SAD-Badal as a political party allied with Bhartiya Janata Party, the ruling party of India, and allege that SAD-Badal wields considerable influence in the state of Punjab and with India's central government. (Compl. ¶ 2.) They describe DSGMC as a representative body for Sikhs, created by an act of India's parliament, that plays pivotal official and unofficial roles in affairs concerning the Sikh community in Delhi and several other states of India. (Compl. ¶¶ 5-7.) Among other functions, DSGMC runs Sikh temples and collects donations and disburses funds, and it has an annual budget of millions of dollars. (Compl. ¶ 7.) Plaintiffs also allege that victims of anti-Sikh violence, in particular victims of anti-Sikh riots in November 1984, look to DSGMC for support, and that DSGMC has publicly championed the cause of the families of victims of anti-Sikh violence. (Compl. ¶ 8.)

Plaintiffs allege that Defendant, as president of SAD-Badal, had the Punjab government machinery and police at his disposal (Compl. ¶ 2). In late 2012, Defendant announced that he would run for the position of president of DSGMC in elections to be held in February 2013. (Compl. ¶ 14.) Over the course of his campaign, Plaintiffs allege, Defendant used the resources of the government, including the Punjab police, in order to secure his election as president of DSGMC. (Compl. ¶¶ 13-14.) They allege that he "used the police and his private goons to torture, harass, intimidate, and hound his political opponents and anyone who did not support his election." (Compl. ¶ 14.) Once elected, they allege, he "wielded even more power to order and unleash torture and terror on anyone opposing him." (Compl. ¶ 15.)

Plaintiff Singh alleges that between 2012 and 2015, he was tortured physically and mentally by police and administration officials, at the behest of Defendant. (Compl. ¶ 10.) When Defendant began his campaign for DSGMC, he reached out to Singh seeking his support, but

Defendant "tricked" Singh "into removing his turban," which is "considered as a huge dishonor," and as a result, Singh refused to support Defendant and Sad-BADAL. (Compl. ¶ 16.) Singh alleges that the torture began following this incident and continued after Defendant's election. (Compl. ¶ 10.) Singh alleges that after he refused to support Defendant, a police party raided Singh's residence, picked him up, and took him to a police station where he was detained for several days without charges or access to a lawyer and was deprived of sleep and adequate food and water. (Compl. ¶¶ 22-23.) Police also blindfolded him and placed a pistol in his mouth, threatening to shoot him, and stripped him naked and hung him upside down. (Compl. ¶ 23.) All of this was done as a "lesson" for refusing to support Defendant. (Compl. ¶ 23.) Following his release, Singh was forced to attend public rallies in support of Defendant and to campaign for Defendant under threat of torture. (Compl. ¶ 24.) Singh's family also received death threats. (Compl. ¶ 10.) As a result of this treatment, Singh fled India for the United States, and he fears for his and his family's safety if he returns to India. (Compl. ¶ 11.)

Plaintiff Kaur is a widow whose husband was killed during the November 1984 anti-Sikh violence. (Compl. ¶ 12.) She alleges that she approached Defendant in 2014, after she learned that DSGMC had announced a plan to compensate widows of the November 1984 violence. (Compl. ¶ 12.) Her case for compensation was denied, and she asked to meet with Defendant. (Compl. ¶ 12.) They met at the DSGMC office in Delhi. (Compl. ¶ 12.) Defendant denied her request for compensation and when Kaur threatened to tell the media about the denial, Defendant "verbally abused and cursed [Kaur] and then ordered his employees and other men to grope and sexually harass" her. (Compl. ¶ 12.) She alleges that Defendant and his men told her that "she should be used to feel several men at the same time because she has been taking it since 1984." (Compl. ¶ 12.) Following this incident, Defendant approved Kaur's request for compensation for

3

her husband's death but also sent "goons" to threaten Kaur with repeated sexual assault if she reported her earlier mistreatment. (Compl. ¶ 12.) As a result, Kaur fled India for the United States. (Compl. ¶ 12.)

All of the alleged abuses took place in India, but both Plaintiffs are now present in the United States. (Compl. ¶ 17.) Defendant is a native and citizen of India, and at the time of filing of the complaint, he was the incumbent president of DSGMC. (Compl. ¶ 13.) At the time of filing, Plaintiffs alleged, "[T]he defendant is believed to have just arrived in the United States within the territorial limits of this District Court." (Compl. ¶ 17; *see also* ¶ 18 ("[A]t or around the time of filing the instant complaint, the defendant is present in the state of New York within the territorial boundaries of this District.").)

## II.   Procedural History

Plaintiffs initiated this action on July 10, 2015, bringing claims under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note), as well as a common-law claim of intentional infliction of emotional distress. (ECF No. 1.) They allege that the Court has subject-matter jurisdiction over their TVPA claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, as well as the general federal question jurisdiction of 28 U.S.C. § 1331. (Compl. ¶ 17.) They allege that the Court has personal jurisdiction over their claims because all parties were in this judicial district at the time of filing. (Compl. ¶ 17.)

While no record of service appears on the docket, Defendants answered on July 31, 2015, asserting affirmative defenses of a lack of subject-matter and personal jurisdiction. (ECF No. 6.) On March 17, 2016, this Court issued an order to show cause as to why this case should not be

dismissed for lack of jurisdiction. (ECF No. 13.) Having reviewed the parties' submissions (ECF Nos. 15-18), the Court turns now to the jurisdictional questions before it.

## DISCUSSION

Plaintiffs' allegations are serious. Nevertheless, the Court may not reach the merits of their claims because it is clear from the complaint that the Court lacks jurisdiction to do so. The Court does not have personal jurisdiction over Defendant and it is less than clear whether the Court has subject-matter jurisdiction over Plaintiffs' claims.

## I.     Personal Jurisdiction

"Because personal jurisdiction can be waived by a party, a district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (emphasis in original) (internal citations omitted). Here, however, Defendant raised the lack of personal jurisdiction as an affirmative defense in its initial responsive pleading, and so it is appropriate for the Court to consider it.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). Where no discovery has taken place, "[a] plaintiff may carry this burden by pleading in good faith legally sufficient allegations of jurisdiction, i.e. by making a *prima facie* showing of jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998)). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp.*,

609 F.3d at 35 (quoting *In re Magnetic Audiotape*, 334 F.3d at 206) (alterations and internal

quotation marks omitted). In addition to the pleadings, the court may also look to affidavits and

supporting materials. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d

Cir. 2010).

The court must accept as true all allegations of jurisdictional facts and resolve all doubts

in plaintiffs' favor. *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008);

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). Nevertheless, "a plaintiff may

not rely on conclusory statements without any supporting facts, as such allegations would 'lack

the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum*

*GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting

*Jazini*, 148 F.3d at 185); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676

(2d Cir. 2013) (concluding that plaintiffs' allegations "are conclusory and insufficient" for

personal jurisdiction purposes.). Nor does the court "draw argumentative inferences" in

plaintiff's favor. *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 556 (S.D.N.Y.

2005) (quoting *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)).

In federal question cases, personal jurisdiction is determined by the law of the forum in

which the court sits. *Whitaker*, 261 F.3d at 208 (citation omitted). This determination involves a

two-step analysis. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

First, the Court must determine whether personal jurisdiction is appropriate under New York's

general jurisdiction statute, C.P.L.R. § 301, or its long-arm specific jurisdiction statute, C.P.L.R.

§ 302(a). *See Schultz v. Safra Nat. Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010); *see*

*also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 n. 9 (2d Cir. 2012).

Second, only if the Court finds that personal jurisdiction is appropriate under New York law, it

must evaluate whether the exercise of personal jurisdiction would comport with the Fifth Amendment Due Process Clause of the United States Constitution. *Licci*, 673 F.3d at 59-60.

Here, Plaintiffs contend that the Court may exercise personal jurisdiction over Defendant under a theory of either general or specific personal jurisdiction.

### a. General Jurisdiction

Turning to general jurisdiction first, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "As a rule, it is not constitutionally permissible to sue an individual or corporation in a state where that individual is not at home and . . . an individual is at home in the state of his domicile." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) (quoting, *inter alia*, *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)) (alterations and internal quotation marks omitted); *see also Deer Consumer Products, Inc. v. Little Grp.*, 961 N.Y.S.2d 357 (N.Y. Sup. Ct. 2012) (CPLR § 301 "codifies a court's power to exercise a 'territorial,' or 'presence' jurisdiction over a defendant, based on his domicile, on any cause of action regardless of where the claim arose." (citing Vincent C. Alexander, Practice Commentaries to CPLR § 301 (2010))).

Plaintiffs argue that "Defendant, while foreign born . . . was physically domiciled here." (Pl.'s Mem., ECF No. 15, 3.) But they make insufficient factual allegations in support of this assertion. They allege only that Defendant was present in the state of New York at the time the complaint was filed, and provide no evidence in support of that allegation. [1] (Compl. ¶ 18). But

---

[1] Plaintiffs purport to submit "as Exhibit 1" an "affidavit of service of the process server," "along with a video on compact disc that shows service in this action within the State of New York." (Pl.'s Mem., 3.) However, no such exhibit was filed. The Court ordered Plaintiffs to file the exhibit by June 1, 2016, and warned Plaintiffs that their failure to do so would result in the Court considering their submission without the exhibit. (*See* ECF No. 19.) Plaintiffs failed to file any exhibit and thus the Court considers their submission without it.

even taking as true Plaintiffs' allegation that Defendant was momentarily present in New York, that allegation does not establish a *prima facie* case that Defendant was domiciled here. Plaintiffs do not allege any facts that courts have found to be "key indicia" of domicile, for instance that Defendant holds a New York State driver's license, maintains personal and business checking and credit card accounts at New York banks, files New York State tax returns, lists New York on tax returns as his home address, or owns any property in New York. *See Reich*, 38 F. Supp. 3d at 455 (describing "key indicia" of domicile). Indeed, in their complaint, Plaintiffs allege that Defendant is deeply involved in local politics in New Delhi, that he wields significant power there, and that he is the incumbent president of two political entities there. (Compl. ¶ 13.) These allegations, along with Defendant's sworn testimony that he was in New York only as a visitor (Def. Aff., ECF No. 17-1, ¶ 5), undercut Plaintiffs' statement that Defendant is domiciled here. Because Plaintiff relies solely on a conclusory statement without any supporting facts to argue that Plaintiff is domiciled here, the Court may not exercise personal jurisdiction on that basis. *See Jazini*, 148 F.3d at 185; *see also Hua Chen v. Honghui Shi*, No. 09 Civ. 8920 (RJS), 2013 WL 3963735, at *4-5 (S.D.N.Y. Aug. 1, 2013) (analyzing personal jurisdiction only pursuant to New York's long-arm statute and not CPLR § 301 where complaint alleged that defendant resided in China and asserted no connection between defendant and United States other than that he was present here as a "temporary visitor" at the time he was served).

New York's general jurisdiction statute also provides for "personal jurisdiction over a non-domiciliary defendant whose business activities within New York are 'continuous and systematic.'" *Wallert v. Atlan*, --- F. Supp. 3d ---, No. 14 Civ. 4099 (PAE), 2015 WL 6459219, at *8 (S.D.N.Y. Oct. 26, 2015) (citing *Beacon Enter. Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983)). "To be amenable to general jurisdiction under § 301, [Defendant] must be doing business

in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id.* (quoting *Beacon*, 715 F.2d at 762). Plaintiffs argue that Defendant was "doing business" in New York, but even assuming that personal jurisdiction over an individual may still be grounded on this theory,[2] Plaintiffs do not make a *prima facie* showing of general jurisdiction on that theory here. In fact, Plaintiffs do not provide the Court with *any* factual allegations describing the nature of Defendant's business in New York. Their complaint contains no allegations that Defendant "does business" in New York and their motion papers argue only that Defendant has "access to enormous resources" in New York and "maintains a very significant presence" in New York.[3] (Pl.'s Mem., 5.) Because Plaintiffs do not aver facts relevant to Defendant "doing business" in New York, they do not aver facts that, if credited, would suffice to establish jurisdiction; thus, they do not establish a *prima facie* showing of general jurisdiction.

### b.  Specific Jurisdiction

Plaintiffs fare no better under New York's long-arm statute. That statute provides:

a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: [1] transacts any business within the state or contracts anywhere to supply goods or services in the state; or [2] commits a tortious act within the state . . .; or [3] commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or [4] owns, uses or possesses any real property situated within the state.

---

[2] *See Reich*, 38 F.Supp.3d at 454-55 (S.D.N.Y.2014) (discussing the implications of *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) on New York's "doing business" exception).

[3] Plaintiffs argue that the Second Circuit's decision in *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) supports a finding of general personal jurisdiction here. The Court does not agree. In that case, the Second Circuit noted that under New York law, a foreign corporation is subject to personal jurisdiction in New York if it is "doing business" in the state, and that a court may, under certain circumstances, assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity. Given that Plaintiffs do not allege that Defendant was affiliated with a New York representative entity, the Court finds *Wiwa* to be entirely inapposite.

C.P.L.R. § 302(a). The first of these provisions cannot apply because, as discussed above, Plaintiffs do not adequately allege that Defendant transacts any business within the state or contracts anywhere to supply goods or services in the state. The second provision cannot apply because all tortious acts alleged by Plaintiffs took place in India. And the fourth provision cannot apply because, as discussed above, Plaintiffs do not allege that Defendant owns, uses, or possesses any real property situated within New York.

The third provision covers tortious acts committed outside the state and "causing injury to person or property *within* the state." C.P.L.R. § 302(a)(3) (emphasis added). For the purposes of this provision, "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir. 1990). Because the location of the original event which caused injury to Plaintiffs here was outside New York, this provision cannot provide jurisdiction. *See Hua Chen*, 2013 WL 3963735, at *4-5 (finding, where plaintiffs alleged that defendants tortured them in China, that "[a]s a legal matter it is immaterial that Plaintiffs now reside in the United States" and continue to suffer mental injuries in New York). Moreover, even if the alleged injuries could be said to have been caused within the state, Plaintiffs do not allege that Defendant "regularly does or solicits business" in New York, "engages in any other persistent course of conduct" here, "derives substantial revenue from goods used or consumed or services rendered" here, or "expects or should reasonably expect the act to have consequences in the state *and* derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3) (emphasis added). Plaintiffs allege only that Defendant was in New York for long enough to receive service here.

Because none of the long-arm statute's provisions confer personal jurisdiction over Defendant, the Court must dismiss this action and need not consider whether exercising personal jurisdiction over Defendant would comport with due process. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

## II.    Subject-Matter Jurisdiction

While this matter must be dismissed due to the Court's lack of personal jurisdiction, the Court briefly addresses the issue of subject-matter jurisdiction, as it is also questionable whether the Court has subject-matter jurisdiction over the claims asserted. "It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (citation and internal quotation marks omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Id*.

"Though the Torture Victim [Protection] Act creates a cause of action for official torture, this statute, unlike the Alien Tort Act, is not itself a jurisdictional statute." *Kadic v. Karadzic* ("*Kadic*"), 70 F.3d 232, 246 (2d Cir. 1995). Thus, plaintiffs must derive jurisdiction from another source. The Second Circuit found in *Kadic* that the TVPA "permits [plaintiffs] to pursue their claims of official torture under the jurisdiction conferred by the Alien Tort Act and also under the general federal question jurisdiction of [28 U.S.C.] section 1331." *Id*.

Here, it is clear, at least, the subject-matter jurisdiction may not be found under the Alien Tort Statute. That statute vests district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations." 28 U.S.C. § 1350. The Supreme Court has held, however, that the ATS does not create federal jurisdiction over

violations of the law of nations that occurred within the territory of a foreign sovereign. *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel*"), 133 S. Ct. 1659, 1669 (2013). Thus, as the Second Circuit has explained, "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*." *Balintulo v. Daimler AG*, 727 F.3d 174, 191 (2d Cir. 2013). Here, all relevant conduct set forth in Plaintiffs' complaint occurred in India, and therefore, Plaintiffs cannot assert jurisdiction under ATS. *See, e.g., id.* (claim under ATS is "barred" where all relevant conduct took place in Bangladesh); *Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7, 9 (2d Cir. 2014) ("Even assuming that, as plaintiffs allege, [defendants] carried out or were responsible for acts of violence against Sikhs, those acts were taken by Indian nationals against other Indian nationals in India. Under the presumption against extraterritoriality, then, as the Supreme Court held in jurisdictionally similar circumstances in *Kiobel*, we lack jurisdiction."). While the *Kiobel* Court indicated that jurisdiction may still exist where the relevant conduct "touched and concerned" the United States, the Court need not engage in that analysis that where, as here, "*all* the relevant conduct" alleged occurred outside the United States. *See Balintulo*, 727 F.3d at 191.

The reach of federal question jurisdiction in the TVPA context is less clear. While it is a "settled proposition that federal common law incorporates international law," *Kadic*, 70 F.3d at 246 (citations omitted), in the very decision in which it noted that the plaintiffs may pursue their TVPA claims under general federal question jurisdiction, the Second Circuit declined to decide whether "causes of action for violations of international law 'arise under' the laws of the United States for the purposes of jurisdiction under section 1331." *Id*. Almost a decade later, the Second Circuit noted without resolving a split of authority on the issue of whether a claim under the TVPA could be brought solely under the jurisdiction conferred by § 1331. *See Flores v. S. Peru*

*Copper Corp.*, 414 F.3d 233, 247 (2d Cir. 2003). Since then, district courts have generally

attempted to avoid this "thorny issue." *See Arndt v. UBS AG*, 342 F. Supp. 2d 132, 141

(E.D.N.Y. 2004) ("Whether subject matter jurisdiction for a claim asserted under the TVPA must

be conferred on this Court through the ACTA or can be based solely on 28 U.S.C. § 1331 is a

thorny issue which the Court does not need to resolve in deciding this motion."); *see also Sikhs*

*for Justice v. Nath*, 893 F. Supp. 2d 598, 617 (S.D.N.Y. 2012) ("[T]his Court declines to reach

on [sic] whether subject matter jurisdiction for a claim asserted under the TVPA must be

conferred on this Court through the [ATS] or can be based solely on 28 U.S.C § 1331."); *Hua*

*Chen*, 2013 WL 3963735, at *7 n. 4 (noting that while the Court did not have jurisdiction under

the ATS, it might still have jurisdiction under § 1331, but finding that "the absence of personal

jurisdiction over Defendant renders Plaintiffs' TVPA claims a dead letter."). *But see Chen Gang*

*v. Zhao Zhizhen*, No. 04 Civ. 1146, 2013 WL 5313411, at *4 (D. Conn. Sept. 20, 2013)

("Without subject matter jurisdiction under the ATS, the Court also lacks jurisdiction over

plaintiffs' TVPA claim.").

  As have other courts in this Cstrict, this Court declines to wade into the "thorny issue" of

whether subject-matter jurisdiction over TVPA claims can be based solely on 28 U.S.C. § 1331,

as Plaintiffs' claims must be dismissed regardless due to lack of personal jurisdiction.

## CONCLUSION

  Because it lacks jurisdiction, the Court must dismiss this action. The Court is not

insensitive to the serious allegations made by Plaintiff. But federal courts "possess only that

power authorized by Constitution and statute," *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.

375, 377 (1994), and this Court may not expand its jurisdiction beyond those bounds.

  Accordingly, the Clerk of Court is directed to terminate this case.

**SO ORDERED.**

**Dated:**  June 2, 2016

      New York, New York

                                  **ANDREW L. CARTER, JR.**
                                  **United States District Judge**